UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LLOYD R. FIELDS,

 Plaintiff,

vs.

BASTECH, INC., *et al.*,

 Defendants.

Case No. 3:19-cv-135

Magistrate Judge Michael J. Newman
(Consent Case)

___

**ORDER AND ENTRY GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 33)**
___

  This civil consent case is before the Court on Plaintiff Lloyd R. Fields's motion for partial summary judgment. Doc. 33. Defendants BasTech, Inc. ("BasTech"), Rapid Direction, Inc. ("RDI"), and Bernard Staub filed a memorandum in opposition. Doc. 43. Plaintiff filed a reply memorandum. Doc. 44. The Court has carefully considered all of the foregoing, as well as all Rule 56 evidence submitted by the parties, and Plaintiff's motion is now ripe for decision.

**I.**

  In support of their arguments on summary judgment, the parties cite deposition testimony from Plaintiff (doc. 38); Defendant Staub (doc. 30); Defendant BasTech's business manager Amber Jones (doc. 32); and BasTech sales coordinator Sherry Grise (doc. 42). In addition to this deposition testimony, the parties cite a number of documentary exhibits. The Court has carefully considered all of the Rule 56 evidence submitted by the parties, *see* Fed. R. Civ. P. 56(c)(1)(A), and unless otherwise stated herein, the following are the material undisputed facts of the case.

  **A.** **Facts Underlying Plaintiff's Claims**

  Plaintiff's claims arise from his employment as CEO of Defendants BasTech and RDI.

Doc. 12. Notably, during Plaintiff's employment, Defendant Staub served as the founder, president, and majority shareholder of BasTech and RDI. *See* doc. 30 at PageID 198; *see also* doc. 38-1 at PageID 561.

Although Plaintiff had previously worked in 2016 as a consultant for Defendants through his own company Quality Insights, LLC ("Quality Insights"), his employment relationship with Defendants actually began on January 1, 2017 when Plaintiff executed an employment agreement to become the full-time CEO of BasTech and RDI (hereinafter referred to as "the 2017 Agreement") at a base salary of $150,000 with the ability to earn equity shares of those companies at certain intervals thereafter. *See* doc. 38-1 at PageID 561. Ultimately, Plaintiff's employment relationship with Defendants ended in April 2019, although a dispute exists as to the nature of Plaintiff's separation from Defendants' employ, *i.e.*, whether Plaintiff voluntarily resigned or whether he was terminated by Defendants. *See id.*; *see also* doc. 38 at PageID 472-76.

There is no dispute, however, that throughout Plaintiff's employment, BasTech and RDI both had significant financial issues, including problems maintaining sufficient cash flow to operate the businesses and make their payroll. *See* doc. 38 at PageID 438, 441, 444-45. In fact, in September 2017, Defendant Staub asked Plaintiff to make a $25,000 loan to BasTech and RDI -- which he did -- so that the companies could make their payroll. *Id.* at PageID 438-40; *see also* doc. 38-1 at PageID 587.

In addition, the parties ultimately agreed that both Plaintiff and Defendant Staub needed to defer some or all of their salaries for a period of time to increase cash flow for the businesses. Accordingly, in January 2018, the parties entered into a new employment agreement (hereinafter referred to as "the 2018 Agreement") which, while again providing that Plaintiff would be paid "an annual base salary of $150,000," also provided that Plaintiff would "defer receipt of up to

2

$7,500 of the Salary each month until . . . December 31, 2018[.]"[1] *Id*.

While the express terms of the 2018 agreement provided for a $7,500 deferral of Plaintiff's salary each month -- which would amount to a total of 60% of Plaintiff's monthly salary being deferred -- Defendants nevertheless deferred 100% of Plaintiff's salary beginning on January 1, 2018 through, at least, September 2018. *See* doc. 209. A dispute exists as to whether Plaintiff agreed to defer 100% of his salary through the end of 2018.

There is no dispute, however, that to date, Plaintiff has not been paid any of the salary deferred in 2018. *See* doc. 30 at PageID 209. Plaintiff alleges that Defendants' failure to pay him his salary: (1) violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and corresponding Ohio wage law; and (2) amounts to a breach of the 2018 Agreement. *See* doc. 33. Plaintiff alleges other claims in his complaint, but those claims are not at issue in his motion for summary judgment and, therefore, remain pending for trial. *Id*.

### B.     Facts Underlying Defendants' Counterclaims

In response to Plaintiff's complaint, BasTech and RDI asserted counterclaims against alleging that Plaintiff: (1) breached the 2018 Agreement; (2) breached fiduciary duties owed to Defendants as a shareholder and officer; and (3) in filing this action, has committed the tort of abuse of process under Ohio law. Doc. 12. Notably, Defendants BasTech and RDI also asserted counterclaims of indemnity and/or contribution against Plaintiff arguing that, "[t]o the extent that BasTech or RDI is liable to [him]" for FLSA or Ohio wage law violations, "then [he] is

---

[1] Under the terms of the 2018 Agreement, Plaintiff's deferred salary could have been payable earlier than December 31, 2018 if BasTech or RDI were sold before that date. Doc. 1-1 at PageID 13. Neither BasTech nor RDI were sold before December 31, 2018 and, if fact, still had not been sold as of December 2019. Doc. 30 at PageID 212. In addition to salary payable under the 2018 Agreement, BasTech and RDI were also to pay Plaintiff the following by no later than December 31, 2017: salary deferred under the 2017 Agreement; the $25,000 Plaintiff loaned to Defendants; and a $10,000 outstanding invoice Defendants owed to Plaintiff's previous company, Quality Insights. *Id*. at PageID 14.

liable to BasTech and RDI as an 'employer' under those laws." *Id*. at PageID 60. The undersigned, however, granted Plaintiff's motion for judgment on the pleadings on Defendants' indemnity or contribution counterclaims and dismissed those claims from this case. Doc. 27.

With regard to the breach of contract counterclaim, there is no dispute that the 2018 Agreement requires Plaintiff to "expend [his] best efforts at all times while performing pursuant to [the 2018] Agreement, to exercise good judgment, to obey all local state and federal laws and regulations, and to follow the policies, practices and directives of [BasTech and RDI]." Doc. 38-1 at PageID 577. Defendants contend that Plaintiff breached this provision when he: (1) agreed to a 100% deferral of his salary in violation of state and federal law and, upon learning of such legal violation, failed to promptly notify Defendants; and (2) prepared invoices in a manner inconsistent with Defendants' practices. (Defendants do not appear to allege that Plaintiff's conduct in this regard was criminal.) *See* doc. 43 at PageID 846.

## II.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

4

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted).  Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id*. (citation omitted).  Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted).  Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406.  In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

### III.

Plaintiff moves for summary judgment on: (1) his claim asserting the non-payment of wages as required by the FLSA and Ohio law; (2) his claim that Defendants breached their duty to keep pay records under the FLSA and Ohio law; (3) his claim that Defendants breached the contract(s) between them; (4) Defendants' counterclaim alleging breach of contract; (5) Defendants' counterclaim alleging breach of fiduciary duty; and (5) Defendants' counterclaim alleging abuse of process.  Doc. 33.  The Court will address each argument in turn.

5

### A. Plaintiff's FLSA and Ohio Law Claims for Unpaid Wages

The FLSA generally requires, *inter alia*, that employers pay employees a minimum wage, as well as overtime compensation for all hours each employee works over forty in a single workweek. *See* 29 U.S.C. §§ 206, 207; *see also Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012). "Any employer who violates the provisions of section 206 [regarding minimum wage] or section 207 [regarding overtime] . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Further, a plaintiff awarded wages under the FLSA is entitled to recover reasonable attorney's fees as costs from the employer. *Id*.

There are numerous exemptions to the minimum wage and overtime pay requirements of the FLSA, such as exemptions for employees employed in an executive, administrative, or professional capacity. *Orton*, 668 F.3d at 846; *see also* 29 U.S.C. § 213; 29 C.F.R. § 541.100. "An employer may raise a plaintiff's status as an exempt employee as an affirmative defense to claims brought under the FLSA" and exemptions "are to be narrowly construed against the employers seeking to assert them." *Id*. at 846-47. In opposing Plaintiff's motion for partial summary judgment on these wage claims, Defendants do not argue that Plaintiff was an exempt employee under the FLSA. Doc. 43.

Instead, while conceding that Plaintiff is a covered employee under the FLSA and Ohio wage laws and that they failed to pay him wages owed, Defendants argue that summary judgment

is inappropriate on these claims because genuine issues of material fact remain as to whether such claims are barred by the affirmative defenses of *in pari delicto* or unclean hands.[2]  *Id.*

"These two defenses are similar."  *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (2015).  "The equitable defense of *in pari delicto*, which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct."  *Pinter v. Dahl*, 486 U.S. 622, 632 (1988).  "In its classic formulation, the *in pari delicto* defense was narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury[.]"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306–07 (1985).  Such defense should only be permitted where "the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater[.]"  *Pinter*, 486 U.S. at 636.  Similarly, the defense of unclean hands applies to deny "equitable relief" to one "who engaged in his own reprehensible conduct in the course of the transaction at issue[.]"  *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360 (1995).

As noted by Defendants here, the defense of *in pari delicto* may apply to certain private actions authorized by statute where two elements are met.  *Bateman Eichler*, 472 U.S. at 310-11.  First, defendant must show that, "as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress[.]"  *Id*.  Second, defendant must establish that "preclusion of suit does not offend the underlying statutory policies[.]"  *Pinter*,

---

[2] Defendants also invite the Court to again consider whether Plaintiff was his own "employer" under the FLSA and Ohio wage statutes.  *See* doc. 43 at PageID 841.  The Court continues to find that Plaintiff was not his own employer under these statutes.  Even assuming, *arguendo*, that Plaintiff could be considered his own employer, the undersigned also continues to find no authority supporting Defendants' contention that their liability under the FLSA or Ohio wage statutes would be minimized as a result.  In fact, as noted in the Court's previous decision, employers have no right to indemnity or contribution under the FLSA -- which is what Defendants' purported affirmative defense in this regard is requesting.  Doc. 27.  In fact, after issuance of this Court's previous decision, the Ninth Circuit reached a similar conclusion, holding that there is no right to indemnity or contribution under the FLSA or federal common law between "employers" liable under the FLSA.  *Scalia v. Employer Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1105 (9th Cir. 2020).  Accordingly, even assuming Plaintiff could be deemed his own "employer" under the FLSA or Ohio wage statutes, the undersigned finds no merit to Defendants' arguments that his status as such minimizes their liability to him as their "employee."

7

486 U.S. 622, 637-38. Similarly, the equitable defense of unclean hands may apply where "(1) the plaintiff's wrongdoing is directly related to the claim, and (2) the defendant was personally injured by the wrongdoing." *Bailey*, 776 F.3d at 801. However, Defendants cite no cases wherein the Sixth Circuit has applied these equitable defenses to wholly bar recovery under the FLSA and the undersigned finds no reliable, persuasive authority upon which to conclude that these defenses are applicable to bar the recovery of earned, but unpaid, wages under the FLSA.

Defendants suggest that the case of *Jackson v. Egira, LLC*, No. CV RDB-14-3114, 2016 WL 1558136, at *4 (D. Md. Apr. 18, 2016) should guide the Court's conclusion in this case. In *Jackson*, plaintiffs sought minimum wage and overtime compensation under the FLSA for hours worked as servers at a restaurant. *Id.* at *1. Defendants argued that *in pari delicto* barred some of the plaintiffs' FLSA claims because certain plaintiffs requested to be paid only in tips -- and to forego wages altogether -- so that their pay was "off the books" for purposes of avoiding income taxes. *Id.* at *2-3. The court in that case found it "premature" at the summary judgment stage "to conclude that *in pari delicto* applie[d] to bar [plaintiffs'] recovery" because issues of fact remained regarding plaintiffs' "participation in the alleged unlawful activity." *Id.* at *4.

Even if the undersigned were to find that the defenses of *in pari delicto* or unclean hands could apply bar recovery under the FLSA (and corresponding Ohio wage statutes), the facts of *Jackson* are readily distinguishable from the facts presented in this case. Unlike the subject plaintiffs in *Jackson*, Plaintiff here never sought to forego wages altogether -- and certainly not for some allegedly nefarious purpose. Instead, Plaintiff here, at best, agreed to *defer* some or all of his earned wages until the end of 2018 in order to help his employers maintain a cash flow. *See* doc. 38-1 at PageID 576-77. Thus, while Plaintiff may have played a role in the deferral of his wages for the purpose of helping his employers, he does not bear equal or greater responsibility for the complete non-payment of his wages.

As a result, even assuming, *arguendo*, that these equitable defenses applied to FLSA claims (and corresponding Ohio wage law claims), the undersigned would find it inequitable to wholly bar Plaintiff from recovering earned, but unpaid, wages simply because he may have agreed to defer payment of some or all of his earned wages to a later date.  As a result, the undersigned declines to apply these equitable defenses to bar Plaintiff's statutory wage claims and, as a result, **GRANTS** Plaintiff's motion for summary judgment as to the issue of liability for unpaid wages.

The issue of damages, however, will be determined at trial.  In this regard, while the undersigned concludes that the equitable defenses of *in pari delicto* and unclean hands do not bar Plaintiff from recovering unpaid wages under the FLSA, the undersigned makes no finding as to whether these equitable defenses might apply to bar or limit other remedies available under the FLSA or corresponding Ohio wage statutes, such as liquidated damages.  *Cf. McKennon*, 513 U.S. at 885-87 (holding that the equitable defense of unclean hands may be relevant in assessing the remedies available under a statute and concluding that the defense of unclean hands applied, in that case, to calculating the proper measure of backpay (an equitable remedy) under the Age Discrimination in Employment Act ("ADEA")); *but see Bailey*, 776 F.3d at 804 n.5 (noting that the equitable defenses, such as *in pari delicto* and unclean hands, may not be applicable to private FLSA actions because, in such actions, "courts are empowered to grant *only* legal relief[,]" not equitable relief) (emphasis in original).

### B. Plaintiff's Prayer for Liquidated Damages under the FLSA

With regard to FLSA damages, Defendants argue in their opposition memorandum that liquidated damages under the FLSA are inappropriate in this case.  Doc. 43 at PageID 843-45. Notably, Plaintiff moved for summary judgment on the issue of liability only and seeks a determination of damages at trial or by subsequent proceedings, as appropriate.  Doc. 33 at PageID 385.  Because Defendants did not separately move for summary judgment on the issue of liquidated

9

damages, the undersigned makes no finding as to liquidated damages at this time. *Cf. Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) ("[E]ntry of summary judgment on grounds not raised or argued by the parties is 'discourage[d]'"). Accordingly, the undersigned declines Defendants' invitation to bar Plaintiff from seeking liquidated damages in subsequent proceedings in this case.

### C. Plaintiff's Claims Assertion Violations of Ohio Recordkeeping Law

Plaintiff next argues that he is entitled to summary judgment on his claim asserting that Defendants violated Ohio Rev. Code § 4111.14 and Section 34a, Article II of the Ohio Constitution by failing to keep records of the hours he worked each day. Doc. 33 at PageID 386. These provisions specifically state that, "[a]n employer shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. Article II, Section 34a; Ohio Rev. Code § 4111.14(F).

Defendants appear to concede that they have no record of Plaintiff's hours worked. Doc. 43 at PageID 835. Defendants, however, point to evidence that all salaried employees were required to keep records of their time -- including time for vacation and work travel -- and a log of those hours concerning other employees has existed for years. *Id*. Thus, they argue that the lack of records regarding Plaintiff's work hours is the result of his own failure to follow corporate policy and, therefore, they should bear no responsibility for his own willful failure. *Id*. Defendants, however, cite no authority in support of their conclusion.

At least one Ohio court reached a conclusion contrary to the one advanced by Defendants. *Welch v. Prompt Recovery Servs., Inc.*, No. 27175, 2015 WL 5578274, at * 3 (Ohio Ct. App. Sept. 23, 2015). There, the court found that liability for the failure to maintain employee records as required by Section 34a, Article II of the Ohio Constitution and Ohio Rev. Code § 4111.14(F) is

10

not avoided simply because the plaintiff "was the employee responsible for creating and maintaining those records." *Id*. In other words, "the [Ohio] Constitution and [Ohio Rev. Code §] 4111.14 create liability for an employer that fails to maintain accurate records, without regard for who created the records" and, thus, "the legal consequences of failing to comply with the record-keeping requirements of the Constitution and [Ohio Rev. Code §] 4111.14(F) fall upon" employers alone. *Id*. There being no dispute that Defendants have no records of Plaintiff's hours worked, summary judgment in favor of Plaintiff on this claim is appropriate. The issue of damages, if any, will be determined at trial.

### D. Plaintiff's Breach of Contract Claim Regarding Non-Payment of Salary

Plaintiff next moves for summary judgment on his claim that Defendants BasTech and RDI breached the 2018 Agreement by failing to pay him his deferred salary. Doc. 33 at PageID 387. Defendants concede that they "did breach their contractual obligation to pay [Plaintiff] his salary[,]" but argue that their obligation to pay him salary was terminated because Plaintiff breached the contract first by: (1) failing to advise Defendants that a 100% deferral of salary violated the FLSA; and (2) his purported failure to exercise good judgment when dating invoices in a manner inconsistent with company practices. Doc. 43 at PageID 846.

Contrary to Defendants' contentions, even assuming, *arguendo*, that Plaintiff materially breached the employment contract prior to any breach by Defendants, Defendants were not at liberty to cease their obligation pay Plaintiff in accordance with the contract while nevertheless continuing to accept his performance under that contract, *i.e.*, his continued employment. *See Ashcraft & Gerel v. Coady*, 244 F.3d 948, 951 (D.C. Cir. 2001). Instead, as provided under basic contract law:

> When one party commits a material breach of contract, the other party has a choice between two inconsistent rights -- it can either elect to allege a total breach, terminate the contract and bring an action or, instead, elect to keep the

11

> contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach -- but the nonbreaching party, by electing to continue receiving benefits under the agreement, cannot then refuse to perform its part of the bargain.

13 WILLISTON ON CONTRACTS § 39:32 (4th ed. 2020). Such hornbook contract law is, unsurprisingly, consistent with Ohio contract law. *See Wilson v. Kreusch*, 675 N.E.2d 571, 576 (Ohio Ct. App. 1996) (concluding that, in seeking damages on a breach of employment contract claim rather than recission of the contract, an employee could not avoid complying with a non-compete provision in the employment contract); *Meyer v. Chieffo*, 950 N.E.2d 1027, 1038 (Ohio Ct. App. 2011) ("It has been cited as an elementary rule of contracts that when a material breach occurs, the nonbreaching party 'may, at his [or her] option, elect to rescind the contract, or continue it in force and sue for damages for the breach'").

Because Defendants neither terminated the agreement between the parties nor sought rescission as a result of Plaintiff's alleged material breaches -- and instead continued accepting Plaintiff's performance as CEO through April 2019 -- they cannot now avoid the obligation to pay him the salary he earned in 2018. *See id*. Instead, Defendants are now limited to recover damages from Plaintiff for his alleged breaches of the 2018 agreement, as they have asserted in their breach of contract counterclaim. *Id.*[3] Accordingly, based on the foregoing, and in light of Defendants' admission that they "breach[ed] their contractual obligation to pay [Plaintiff] his salary," the undersigned finds that summary judgment in Plaintiff's favor is proper on his breach of contract claim in the undisputed amount of $174,865.28.

---

[3] Such conclusion is also consistent with the specific terms of the 2018 agreement, which states that, "[f]or the duration of [Plaintiff's] employment with [BasTech and RDI], [they] shall pay Employee an annual base salary of $150,000.00[.]" Doc. 38-1 at PageID 576. Pursuant to the 2017 agreement, Plaintiff's employment could be terminated in a limited number of ways, all of which require that BasTech and RDI pay Plaintiff, *inter alia*, all salary earned and deferred in 2018. *See id*.

12

### E. Plaintiff's Breach of Contract Claim Regarding Removing Him as CEO

Plaintiff also argues that Defendants breached the 2018 employment agreement by removing him from his CEO position. *See* doc. 33 at PageID 387. Plaintiff's argument in this regard is not entirely clear. The 2018 Agreement permits either party to terminate the agreement and further permits BasTech and RDI to terminate Plaintiff's employment with or without cause. *See* doc. 38-1 at PageID 578. As noted above, material dispute of fact remains as to how Plaintiff's employment ended. *See supra*. And while there may be issues as to whether Defendants fully complied with the termination provisions set forth in the 2018 Agreement, it is not clear whether Plaintiff is asserting a breach of those provisions in advancing this claim. There appearing to be genuine issues of material fact remaining in this regard, the Court finds summary judgment on this breach of contract claim to be inappropriate.

### F. Defendants' Breach of Contract Counterclaim

Plaintiff also moves for summary judgment on Defendants' breach of contract counterclaims. Doc. 33 at PageID 388-89. As noted above, Defendants allege that Plaintiff breached the 2018 Agreement by: (1) failing to advise Defendants that a 100% deferral of salary violated the FLSA; and (2) his purported failure to exercise good judgment when dating invoices in a manner inconsistent with company practices. Doc. 43 at PageID 846. The specific contractual provision at issue requires Plaintiff to "expend [his] best efforts at all times while performing pursuant to [the 2018] Agreement, to exercise good judgment, to obey all local state and federal laws and regulations, and to follow the policies, practices and directives of [BasTech and RDI]." Doc. 38-1 at PageID 57 7.

From the Court's perspective, Defendants' breach of contract counterclaims turn on the question of whether Plaintiff agreed to 100% deferral of salary in 2018 and whether Plaintiff's preparation of invoices was done in a manner inconsistent with the policies, practices and

13

directives of BasTech and RDI. Issues of fact remain as to these matters and, therefore, summary judgment on Defendants' breach of contract counterclaims is inappropriate.

### G. Breach of Fiduciary Duty Counterclaim

Next, Plaintiff moves for summary judgment on Defendants' claim alleging that Plaintiff breached fiduciary duties owed to them by preparing invoices in a manner inconsistent with company practices. Doc. 33 at PageID 389-91. While Defendants allege in their counterclaim that Plaintiff owed fiduciary duties both as an officer and a shareholder of BasTech and RDI, *see* doc. 12 at PageID 61, in opposing Plaintiff's motion for summary judgment, they argue only that Plaintiff owed duties as a corporate officer. *See* doc. 43 at PageID 848. Accordingly, the Court finds Defendants have abandoned any claim alleging breach of fiduciary duties owed by Plaintiff in his role as a minority shareholder and, instead, focus only on Defendants' counterclaim that Plaintiff breached fiduciary duties owed in his role as CEO of BasTech and RDI.[4]

Under Ohio law, corporate officers "shall perform the officer's duties to the corporation in good faith, in a manner the officer reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances." Ohio Rev. Code § 1701.641(B). Such fiduciary duties are the only fiduciary duties an offer owes to the corporation "[u]nless the articles, the regulations, or a written agreement with an officer establishes additional fiduciary duties." Ohio Rev. Code § 1701.641(A). In this case, Defendants point to no additional fiduciary duties imposed by any articles of

---

[4] There is no dispute that Plaintiff was a minority shareholder of BasTech and RDI. Defendants cite no law regarding the nature of fiduciary duties owed by minority shareholders. Some courts have concluded that "[m]inority shareholders owe no fiduciary duty to fellow shareholders." *Benincasa v. Flight Sys. Auto. Grp., LLC*, 242 F.Supp.2d 529, 539 (N.D. Ohio 2002). Others, however, have concluded that "shareholders of closely-held corporations still owe each other ordinary fiduciary duties[,]" albeit not the heightened duties owed by majority shareholders. *Joseph v. Joseph*, No. 1:16-CV-465, 2018 WL 488195, at *8 (S.D. Ohio Jan. 19, 2018). In light of Defendants' abandonment of claims stemming from any purported breach of fiduciary duties Plaintiff owed in his role as a minority shareholder, the Court need not address whether a minority shareholder owes fiduciary duties or the extent of any such duties.

14

incorporation, corporate regulations, or in the 2018 Agreement between the parties. *See* doc. 43 at PageID 847-48. Accordingly, the extent of Plaintiff's fiduciary duties owed are those outlined in Ohio Rev. Code § 1701.641(B).

"An officer shall be liable in damages for a violation of the officer's [fiduciary] duties . . . only if it is proved by clear and convincing evidence . . . that the officer's action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the corporation or undertaken with reckless disregard for the best interests of the corporation." Ohio Rev. Code § 1701.641(D). In this case, Defendants point to no direct or circumstantial evidence -- and, in fact, do not even argue -- that Plaintiff's acts or failures to act were done with deliberate intent to cause injury to Defendants or were performed with reckless disregard for Defendants' best interests. Accordingly, the undersigned finds summary judgment in favor of Plaintiff is appropriate on Defendants' breach of fiduciary duty claims.

## H. Defendants' Abuse of Process Counterclaim

In his final argument, Plaintiff moves for summary judgment on Defendants' abuse of process claim asserted under Ohio common law. "In order to establish a claim of abuse of process, a plaintiff must satisfy three elements: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996) (internal quotations omitted). At issue here is whether Plaintiff has perverted this legal proceeding to accomplish some ulterior purpose.

To satisfy the second element, Defendants bear the burden of showing "both an act committed during the process that was not proper in the normal context of the proceeding and the [Plaintiff's] ulterior motive." *Beamer v. NETCO Inc.*, 411 F. Supp. 2d 882, 890 (S.D. Ohio 2005)

15

(citing *Wolfe v. Little*, No. 18718, 2001 WL 427408, at *3 (Ohio Ct. App. Apr. 27, 2001)). In other words, Defendants must show that Plaintiff "committed improper acts during the judicial process." *Wolfe*, 2001 WL 427408 at *3. Thus, in addition to showing an "ulterior purpose," Defendants must show that Plaintiff engaged in an act "in the use of process not proper in the regular conduct of the proceeding." *Pheils v. Garber-Lawrence Pub. Grp., Inc.*, No. L-92-418, 1993 WL 513200, at *13 (Ohio Ct. App. Dec. 10, 1993).

Here, Defendants allege that Plaintiff filed this action for the ulterior purpose of maximizing his financial gain under the 2018 Agreement between the parties. Doc. 12 at PageID 62. Beyond the mere filing of the complaint, however, Defendants point to no improper act committed by Plaintiff during the judicial process that was performed in furtherance of this allegedly improper purpose. Thus, it appears that, as alleged and presented in opposition to Plaintiff's motion for summary judgment, Defendants' abuse of process claim is based solely on Plaintiff's filing of the complaint. However, "[a]buse of process does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse' of process" once a proper claim has been commenced." *Gugliotta v. Morano*, 829 N.E.2d 757, 768 (Ohio Ct. App. 2005).

Having failed to evidence -- or even identify -- an improper act performed by Plaintiff during the regular conduct of this litigation, Defendants' counterclaim must fail as a matter of law.

**IV.**

For the foregoing reasons, Plaintiff's motion for partial summary judgment (doc. 33) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Plaintiff is **GRANTED** summary judgment regarding liability on his claims seeking unpaid wages under the FLSA and Ohio law;

(2) Plaintiff is **GRANTED** summary judgment regarding liability on his claims alleging violations of Ohio Rev. Code § 4111.14 and Section 34a, Article II of the Ohio Constitution;

16

(3) Plaintiff is **GRANTED** summary judgment on his breach of contract claim as it relates to the non-payment of salary in the amount of $174,865.28;

(4) Plaintiff's motion for partial summary judgment is **DENIED** with regard to his claim alleging breach of contract for removing him as CEO of BasTech and RDI;

(5) Plaintiff's motion for partial summary judgment is **DENIED** with regard to Defendants' breach of contract counterclaims;

(6) Plaintiff is **GRANTED** summary judgment on Defendants' counterclaim alleging breach of fiduciary duty; and

(7) Plaintiff is **GRANTED** summary judgment on Defendants' counterclaim alleging abuse of process.

**IT IS SO ORDERED.**

Date:  June 15, 2020             s/ Michael J. Newman
                                 Michael J. Newman
                                 United States Magistrate Judge